# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 15-70038

United States Court of Appeals
Fifth Circuit

**FILED**

May 8, 2018

Lyle W. Cayce
Clerk

ANTHONY CARDELL HAYNES,

      Petitioner - Appellant

v.

LORIE DAVIS, DIRECTOR, TEXAS DEPARTMENT OF CRIMINAL JUSTICE, CORRECTIONAL INSTITUTIONS DIVISION,

      Respondent - Appellee

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:05-CV-3424

Before DENNIS, CLEMENT, and SOUTHWICK, Circuit Judges.

EDITH BROWN CLEMENT, Circuit Judge:*

Petitioner Anthony Cardell Haynes appeals the district court's denial of his motion for relief from judgment pursuant to Federal Rule of Civil Procedure 60(b). For the reasons stated below, we AFFIRM.

---

    * Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 15-70038

I

Haynes was convicted by a jury of murdering an off-duty police officer and sentenced to death. He was denied state habeas relief in 2004 and federal habeas relief in 2007. In Haynes' initial federal habeas petition, he contended that his trial counsel was constitutionally deficient under *Strickland v. Washington*, 466 U.S. 668 (1984) and *Wiggins v. Smith*, 539 U.S. 510 (2003), because counsel failed to investigate and present available mitigating evidence at the penalty phase of his capital trial. Haynes also alleged that his state habeas counsel was ineffective, in part because counsel neglected to present several meritorious constitutional claims on appeal. The district court found that Haynes' claims—including the relevant ineffective assistance of trial counsel ("IATC") claims—were unexhausted and procedurally barred; the district court alternatively rejected his claims on the merits. This court ultimately denied Haynes' appeal, *see Haynes v. Thaler*, 438 F. App'x 324 (5th Cir. 2011), the Supreme Court denied certiorari review, *see Haynes v. Thaler*, 566 U.S. 964 (2012), and the state set his execution date for October 18, 2012.

Haynes proceeded to file a motion for relief from judgment in the district court pursuant to Rule 60(b)(6). He claimed that the Supreme Court's decision in *Martinez v. Ryan*, 566 U.S. 1 (2012)—which held that inadequate assistance of counsel at state collateral proceedings may establish cause for procedural default of an IATC claim—constituted an "extraordinary circumstance" warranting relief from judgment. The district court denied the motion on several bases: (1) based on *Ibarra v. Thaler*, 687 F.3d 222 (5th Cir. 2012), the equitable exception announced in *Martinez* did not apply to Texas prisoners; (2) *Martinez* was merely a change in law and did not constitute an "extraordinary circumstance"; (3) relief was unnecessary because Haynes' IATC claims had actually been adjudicated—and rejected—on the merits; and (4) even if *Martinez* was applicable, Haynes could not demonstrate "actual

2

prejudice" arising from his state habeas counsel's failure to raise his IATC claim on collateral review.

This court denied Haynes' application for a certificate of appealability and his motion for a stay of execution, agreeing with the district court that *Ibarra* controlled. *See Haynes v. Thaler*, 489 F. App'x 770 (5th Cir. 2012). The Supreme Court ultimately granted Haynes a stay of execution. *See Haynes v. Thaler*, 568 U.S. 970 (2012). Following its decision in *Trevino v. Thaler*, 569 U.S. 413 (2013)—which held that *Martinez* does in fact apply to Texas prisoners—the Supreme Court vacated and remanded the case, and this court remanded to the district court for reconsideration of Haynes' Rule 60(b) motion in light of *Trevino*. The district court again denied Haynes' motion, standing by its three alternative, and independently adequate, grounds for rejecting Haynes' claims: (1) the change in decisional law does not, by itself, constitute an "extraordinary circumstance" warranting relief; (2) the court had already considered the underlying merits of Haynes' claims and found no basis for relief; and (3) Haynes failed to demonstrate actual prejudice stemming from state habeas counsel's failure to raise his IATC claim. This appeal follows.

## II

This court reviews a denial of a Rule 60(b) motion for abuse of discretion. *Diaz v. Stephens*, 731 F.3d 370, 374 (5th Cir. 2013). Under this standard, "[i]t is not enough that the granting of relief might have been permissible, or even warranted[—]denial must have been so unwarranted as to constitute an abuse of discretion." *Id.* (quoting *Seven Elves, Inc. v. Eskenazi*, 635 F.2d 396, 402 (5th Cir. 1981)).

## III

Rule 60(b) provides generally that the court may relieve a party from a final judgment, order, or proceeding in the event of obvious error such as mistake or inadvertence, newly discovered evidence, or fraud. *See* Fed. R. Civ.

No. 15-70038

P. 60(b)(1)–(3). Rule 60(b)(6), often referred to as the "catchall" provision, also permits the court to relieve a party from judgment for "any other reason that justifies relief." Fed. R. Civ. P. 60(b)(6). This court has cautioned, however, that "[t]he desire for a judicial process that is predictable mandates caution in reopening judgments." *Carter v. Fenner*, 136 F.3d 1000, 1007 (5th Cir. 1998) (quoting *Bailey v. Ryan Stevedoring Co.*, 894 F.2d 157, 160 (5th Cir. 1990)). Accordingly, relief under Rule 60(b)(6) is only appropriate upon a showing of "extraordinary circumstances." *Rocha v. Thaler*, 619 F.3d 387, 400 (5th Cir. 2010). The Supreme Court has stated that "[s]uch circumstances will rarely occur in the habeas context." *Gonzalez v. Crosby*, 545 U.S. 524, 535 (2005). Furthermore, a change in decisional law does not, on its own, constitute an "extraordinary circumstance" warranting relief from judgment. *Adams v. Thaler*, 679 F.3d 312, 319 (5th Cir. 2012) (citing *Bailey*, 894 F.2d at 160); *see also Gonzalez*, 545 U.S. at 536. "[T]his rule applies with equal force in habeas proceedings under the Antiterrorism and Effective Death Penalty Act ("AEDPA")." *Adams*, 679 F.3d at 320 (internal quotations omitted).

In *Buck v. Davis*, the Supreme Court explained that in determining whether a petitioner has demonstrated "extraordinary circumstances," courts may consider a "wide range of factors," which may include "'the risk of injustice to the parties' and 'the risk of undermining the public's confidence in the judicial process.'" 137 S. Ct. 759, 778 (2017) (quoting *Liljeberg v. Health Services Acquisition Corp.*, 486 U.S. 847, 864 (1988)). This court has articulated a number of equitable factors relevant to the Rule 60(b) inquiry:

> (1) That final judgments should not lightly be disturbed; (2) that the Rule 60(b) motion is not to be used as a substitute for appeal; (3) that the rule should be liberally construed in order to achieve substantial justice; (4) whether the motion was made within a reasonable time; (5) whether if the judgment was a default or a dismissal in which there was no consideration of the merits the interest in deciding cases on the merits outweighs, in the

4

particular case, the interest in the finality of judgments, and there is merit in the movant's claim or defense; (6) whether if the judgment was rendered after a trial on the merits the movant had a fair opportunity to present his claim or defense; (7) whether there are intervening equities that would make it inequitable to grant relief; and (8) any other factors relevant to the justice of the judgment under attack.

*Seven Elves*, 635 F.2d at 402. Though we have never explicitly held that the "*Seven Elves* factors" bear on the extraordinary circumstances analysis under Rule 60(b)(6) specifically, we have used them as a guide in evaluating the strength of a motion brought pursuant to Rule 60(b)(6). *See, e.g.*, *Diaz*, 731 F.3d at 377 (stating that "[w]e will assume *arguendo* that *Seven Elves* may have some application in the Rule 60(b)(6) context"); *Matter of Al Copeland Enters., Inc.*, 153 F.3d 268, 272 (5th Cir. 1998) (noting that several *Seven Elves* factors weighed in favor of sustaining the lower court's grant of the party's Rule 60(b)(6) motion).

We have recognized, however, that "in the context of habeas law, comity and federalism elevate the concerns of finality, rendering the 60(b)(6) bar even more daunting." *Diaz*, 731 F.3d at 376 n.1. Furthermore, while the viability of a petitioner's underlying constitutional claim may be tangentially relevant to the Rule 60(b) analysis, *see, e.g.*, *Buck*, 137 S. Ct. at 778, the Rule may not be used to attack "the substance of the federal court's resolution of a claim *on the merits*." *Gonzalez*, 545 U.S. at 532 (emphasis added); *see also Adams*, 679 F.3d at 319. Such motions constitute improper successive habeas petitions under AEDPA. *Id.* Instead, Rule 60(b) motions must allege "some defect in the integrity of the federal habeas proceedings," *Gonzalez*, 545 U.S. at 532, and may challenge only erroneous rulings "which precluded a merits determination[—]for example, a denial for such reasons as failure to exhaust, procedural default, or statute-of-limitations bar," *id.* at n. 4.

Haynes acknowledges that the change in decisional law effectuated by *Martinez* and *Trevino* is insufficient, on its own, to demonstrate "extraordinary circumstances." He maintains, however, that the balance of individual equities this court considers when reviewing a Rule 60(b) motion weighs in his favor. The gravamen of Haynes' argument is that, because he has demonstrated that he has a substantial IATC claim and that his state habeas counsel was deficient in failing to raise it, he has established "extraordinary circumstances" warranting relief from judgment. We disagree.

First, whether "there is merit in [Haynes'] claim" only becomes a relevant factor in the Rule 60(b) analysis if "there was no consideration of the merits" below. *Seven Elves*, 635 F.2d at 402. Here, the district court reviewed the merits of Haynes' underlying IATC claim on multiple occasions. Furthermore, as the district court has repeatedly noted, the merits of Haynes' IATC claim are not particularly compelling.[1] Despite Haynes' efforts to demonstrate the contrary, the record indicates that Haynes' trial counsel was more than adequate and that counsel's penalty-phase investigation was sufficiently diligent. *See Wiggins*, 539 U.S. at 522–23. The thrust of Haynes' argument seems to be that there may have been a *better* mitigation strategy available to defense counsel. But this amounts to no more than a claim that a different strategy could have been "more effective," which falls far short of the required showing that "but for counsel's errors, the result of the proceeding would have been different." *Coble v. Quarterman*, 496 F.3d 430, 436 (5th Cir. 2007). Accordingly, even if we were to agree with Haynes that he has raised a

---

[1] Although we touch briefly on the merits of Haynes' IATC claim, as they are arguably relevant to our "extraordinary circumstances" analysis, we are precluded from conducting a comprehensive merits review. *Gonzalez*, 545 U.S. at 532; *see also Adams*, 679 F.3d at 319. Haynes' Rule 60(b) motion may not be used to attack the substance of the district court's resolution of Haynes' IATC claim on the merits or to circumvent the requirements imposed by AEDPA. *Gonzalez*, 545 U.S. at 532.

colorable claim with respect to the adequacy of his state habeas counsel, he would still be unable to claim the benefit of *Martinez* and *Trevino. See Martinez*, 566 U.S. at 14 (stating that "to overcome [] default, a prisoner must also demonstrate that the underlying [IATC] claim is a substantial one").

The balance of the remaining equitable factors also weighs against granting relief under Rule 60(b)(6). In addition to considering whether the district court conducted a merits review, we also take into account the fact that "final judgments should not be lightly disturbed" and that "the Rule 60(b) motion is not to be used as a substitute for appeal." *Seven Elves*, 635 F.2d at 402. Again, finality is a particularly strong consideration in the habeas context. *See Diaz*, 731 F.3d at 376 n. 1. Haynes was convicted by a jury in state court nearly twenty years ago. He has been litigating his claims in federal court for over a decade, and this case has gone through multiple cycles of review. As the court stated in *Diaz*, the "State's strong interest in the finality of [Haynes'] conviction and sentence[] and the delay that will undoubtedly result from reopening this long-closed case all weigh in favor of denying [his] Rule 60(b)(6) motion." *Id*. at 378. Moreover, to the extent that the underlying purpose of Haynes' motion is to force this court to review the merits of his IATC claim, he is impermissibly using Rule 60(b)(6) as a "substitute for appeal." *Seven Elves*, 635 F.2d at 402. Haynes has already received a more in-depth merits review of his claims than he was likely entitled from the district court, and his Rule 60(b)(6) motion is an improper vehicle for relitigating them.

In sum, Haynes has not demonstrated "extraordinary circumstances" warranting relief from judgment. The district court did not abuse its discretion in denying his Rule 60(b)(6) motion.

IV

For the foregoing reasons, we AFFIRM.

No. 15-70038

JAMES L. DENNIS, Circuit Judge, dissenting:

At the time of the capital crime in question, Anthony Haynes was nineteen years old, had no prior criminal record, and was apparently under the influence of drugs.  At the punishment phase of his capital trial, Haynes was deprived of the opportunity to present his best defense.  Haynes was deprived of the opportunity to raise his ineffective assistance of trial counsel claim in state court by what appears to have been egregiously deficient post-conviction counsel.  And he was deprived of federal review of his claim by a procedural bar that the Supreme Court has since expressly lifted.  The majority opinion now refuses to allow Haynes's claim to go forward, on the theory that Haynes's claim lacks merit and that, in any event, he has already had a fair shot at litigating it.  Because I believe that Haynes presents a substantial ineffective-assistance-of-trial-counsel claim that has never been properly considered and that the district court abused its discretion in failing to reopen his case, I respectfully dissent.

*

Haynes's claim is before us on appeal from the denial of a motion for relief from judgment under Federal Rule of Civil Procedure 60(b)(6), which requires Haynes to demonstrate the presence of "extraordinary circumstances."  *See Gonzalez v. Crosby*, 545 U.S. 524, 535 (2005).  "In determining whether extraordinary circumstances are present, a court may consider a wide range of factors. . . . [including] 'the risk of injustice to the parties' and 'the risk of undermining the public's confidence in the judicial process.'"  *Buck v. Davis*, 137 S. Ct. 759, 778 (2017) (quoting *Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 863–64 (1988)).

We review a district court's Rule 60(b) determination deferentially, and extraordinary circumstances are just that, extraordinary.  But that does not

mean that a district court's discretion is limitless, or that relief is all but impossible to obtain. *See, e.g.*, *Buck*, 137 S. Ct. at 778. A district court "must exercise its discretion within the bounds set by . . . relevant, binding precedents." *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 310 (5th Cir. 2008). Such relevant, binding precedents here include *Osborne v. Homeside Lending, Inc. (In re Osborne)*, 379 F.3d 277, 283 (5th Cir. 2004), which directs that circumstances supporting Rule 60(b) relief "must necessarily be evaluated on a case-by-case basis"; *Seven Elves, Inc. v. Eskenazi*, 635 F.2d 396, 402 (5th Cir. 1981), which provides a non-exclusive list of factors to be considered in balancing the equities of a Rule 60(b) motion, including whether a claim is substantial, yet previously unreviewed; and *Gonzalez v. Crosby*, 545 U.S. at 537, which recognizes the salience of diligence to Rule 60(b) motions that are premised, in part, on a change in decisional law. In this case, the district court failed to consider all of the relevant factors and misevaluated the factors it did consider. While the majority opinion at least places this case in the proper framework, it stumbles in its assessment of significant factors.

Initially, it is important to keep in mind that this case is before us because Haynes's claim was denied merits review by a procedural bar that was lifted shortly after final judgment was entered in his federal habeas case. Through its decisions in *Martinez v. Ryan*, 566 U.S. 1, 17 (2012), and *Trevino v. Thaler*, 569 U.S. 413, 429 (2013), the Supreme Court made it possible for a petitioner like Haynes to present his procedurally-barred ineffective-assistance-of-trial-counsel claim if his claim is "substantial" and if his state habeas counsel was ineffective in failing to bring the claim. *See Trevino*, 569 U.S. at 429; *Martinez*, 566 U.S. at 17. In so doing, the Court effected a remarkable sea change in decades-old precedent that lower courts and litigants previously understood as settled. *See Martinez*, 566 U.S. at 15; *id.* at 23 (Scalia, J., dissenting) (noting that *Martinez* is "a repudiation of the

longstanding principle governing procedural default, which Coleman and other cases consistently applied"); *id.* at 2 (describing *Martinez* as "a radical alteration of our habeas jurisprudence"). The change adopted in *Martinez* and expanded in *Trevino* "was also important, crafted, as it was, to ensure that fundamental constitutional claims receive review by at least one court." *Cox v. Horn*, 757 F.3d 113, 124 (3d Cir. 2014). Though not alone an "extraordinary circumstance" warranting Rule 60(b) relief, this significant change in habeas jurisprudence provides an important baseline for our review of Haynes's particular circumstances.

The majority opinion insists that "the district court reviewed the merits of Haynes' underlying IATC claim on multiple occasions." Op. at 6. But, as I have previously noted, though purporting to address the merits, the district court's opinion denying Haynes habeas relief entirely failed to engage with the specifics of Haynes's ineffective-assistance-of-counsel claim. *See Haynes v. Stephens*, 576 F. App'x 364, 366 (5th Cir. 2014) (Dennis, J. concurring). The district court addressed Haynes's fact-intensive claim in three sentences:

> [A]s noted by respondent, Haynes' argument is essentially "not that counsels' performance should have been better, rather, his argument is that counsel should have investigated and presented evidence at the punishment phase in a completely different manner." The record indicates that the defense counsel (as well as the prosecution and trial court) went to great lengths to ensure that Haynes' constitutional rights were protected and viable defenses pursued. Haynes' allegations do not show flagrant omissions by the players involved in his trial; rather, they merely demonstrate the exercise of strategy and typify the maxim that "the Constitution entitles a criminal defendant to a fair trial, not a perfect one."

*Haynes v. Quarterman*, No. H-05-3424, 2007 WL 268374, at *9 (S.D. Tex. Jan. 25, 2007) (citations omitted). The Supreme Court has rejected a similarly

No. 15-70038

cursory alternative holding as insufficient to constitute review on the merits. *Cone v. Bell*, 556 U.S. 449, 474–75 (2009).

And even if the district court had engaged in some meaningful merits review, Haynes did not receive full consideration of his claim because, although he sought to appeal the district court's merits holding, this court did not grant review of that issue, instead denying a certificate of appealability on the ground that it was procedurally barred. *See Haynes v. Quarterman*, 526 F.3d 189, 194–96 (5th Cir. 2008). "A party who seeks review of the merits of an adverse ruling, but is frustrated by the vagaries of circumstance, ought not in fairness be forced to acquiesce" to that ruling. *See U.S. Bancorp Mortg. Co. v. Bonner Mall Pshp.*, 513 U.S. 18, 25 (1994). Indeed, when a district court's judgment is based on alternative holdings and this court addresses only one of these holdings on appeal, the district court's ruling is only conclusive as to that holding. *See Borst v. Chevron Corp.*, 36 F.3d 1308, 1314 n.11 (5th Cir. 1994) ("Because we do not consider whether or not a partial vertical (or horizontal) termination occurred, the district court's ruling on this issue is not conclusive between the parties."); *Dow Chem. v. EPA*, 832 F.2d 319, 323 (5th Cir. 1987) ("The federal decisions agree that once an appellate court has affirmed on one ground and passed over another, preclusion does not attach to the ground omitted from its decision.") (quoting 18 CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE & PROCEDURE § 4421 (1981)). Because the final judgment as to Haynes's ineffective-assistance-of-counsel claim rested solely on procedural grounds, the majority opinion's suggestion that our current review is constrained by 28 U.S.C. § 2244, which applies when a claim has been adjudicated on its merits, is unfounded.[1]

---

[1] Nor was the district court's cursory discussion of the merits at the Rule 60(b) phase a sufficient merits review. In *Buck v. Davis*, the Supreme Court held that the district court abused its discretion by declining to reopen a petitioner's case, notwithstanding the Court's

No. 15-70038

The majority opinion further errs by dismissing Haynes's claim as "not particularly compelling." *See* Op. at 6.  This conclusion is tenable only if, like the district court and the majority opinion, one does not actually engage with the specifics of Haynes's ineffective-assistance claim.[2]  In support of his contention that trial counsel's penalty-phase investigation and presentation were unconstitutionally deficient, Haynes relies on the report of a mitigation specialist who opines that counsel's investigation was extremely limited in depth and breadth as a function of its unreasonably late start.  He also points to significant mitigation evidence amassed by federal post-conviction counsel, which trial counsel either did not discover, did not present, or both.  Haynes's evidence supports a substantial claim both that trial counsel's penalty phase performance was deficient and that the deficiency prejudiced him.

Haynes confessed, on tape, to shooting the victim with the belief that he was a police officer.  Faced with a strong case for Haynes's guilt of capital murder, part of counsel's defense was that Haynes may have "believed" that the victim was a police officer, but did not "know" that this was true.  Because their guilt-phase argument was unlikely to be successful, reasonable counsel would have begun to focus on the penalty phase early on.  *Cf. Walbey v. Quarterman*, 309 F. App'x 795, 801 (5th Cir. 2009) ("Given the Texas law establishing that the facts of [defendant's] crime are themselves legally sufficient to support a finding of future dangerousness, the virtually impossible

---

observation that the district court had discussed the merits of the claim in its Rule 60(b) order.  137 S. Ct. at 772, 778.  In any event, the district court's alternative holdings have again deprived Haynes of appellate review of this issue.

[2] The majority opinion contends that "we are precluded from conducting a comprehensive merits review."  Op. at 6.  Neither *Gonzalez v. Crosby*, 545 U.S. 524 (2005), nor *Adams v. Thaler*, 679 F.3d 312 (5th Cir. 2012), supports this assertion.  However, I do agree that it is not our task at this stage to decide whether Haynes has a meritorious claim, only whether the merits of his claim are substantial.

battle that [counsel] faced on future dangerousness makes all the more unreasonable [his] failure to investigate a mitigation defense thoroughly.").

Yet the record reflects that counsel delayed psychological evaluations until after the trial had begun. Given Haynes's history of significant mental-health interventions, of which competent counsel should have been aware, counsel should not have waited until the last minute to solicit expert evaluations. *Cf. Escamilla v. Stephens*, 749 F.3d 380, 386, 392 (5th Cir. 2014) (granting COA on plaintiff's ineffective-assistance-of-counsel claim where counsel, inter alia, "failed to obtain a psychological evaluation for their client until after trial began"); *Busby v. Davis*, 677 F. App'x 884, 886, 893 (5th Cir. 2017) (holding that reasonable jurists could debate whether habeas petitioner had presented a viable ineffective-assistance-of-counsel claim where counsel "waited approximately nineteen months to assemble a mitigation investigation team[,] hired a mitigation specialist days before voir dire," and hired a mental-health expert a week after voir dire started). According to Haynes's post-conviction expert, mental-health professionals would not have had sufficient time to make a reasonable assessment within the timeframe counsel's tardy investigation allowed. Unsurprisingly, then, the trial experts' reports were unhelpful, and extensive mental-health evidence presented by the State went unchallenged and uncontextualized.

Moreover, counsel waited until shortly before trial to conduct most lay-witness interviews. When they finally did begin their investigation, they failed to speak to multiple character witnesses suggested by Haynes's parents and turned away witnesses who reached out to them. Several witnesses who testified at trial claimed that counsel did not properly prepare them. Trial counsel presented only a handful of mitigation witnesses, some of whom did not seem to know Haynes well.

13

By contrast, federal habeas counsel has presented affidavits from dozens of Haynes's friends, family, and acquaintances, representing a veritable cross-section of Haynes's community. Affidavits from two of Haynes's ex-girlfriends, in addition to affirming Haynes's good character, describe how upset and remorseful Haynes was after the shooting. Other affidavits attest that Haynes was a "good kid" and "very respectable," that he was not violent, and that he was not likely to be a future danger. Several affidavits state that Haynes was not hostile toward authority figures or police officers. An affidavit from Haynes's teacher avers that Haynes was among the best students in his school's ROTC program. There is no basis in this record to conclude that counsel's failure to present these witnesses resulted from a strategic decision when their principal mitigation theory seems to have been that Haynes was a good kid. Rather, trial counsel's mitigation presentation appears to have been needlessly and inexplicably meager.

In addition, federal habeas counsel has presented evidence of Haynes's history of mental-health problems and Attention Deficit Hyperactivity Disorder, Haynes's drug use at the time of the murder, and his low risk of future violence. Because of their late and limited investigation, trial counsel failed to present this evidence, which would have augmented Haynes's case for a life sentence in multiple, significant ways, presenting a stronger case for both mitigation and a lack of future dangerousness.

Additional details of Haynes's childhood would have shown a more complete picture of chaos and abuse, undercutting the idea that Haynes had a privileged upbringing—one of the principal themes of the prosecution's penalty-phase case. *Cf. Sears v. Upton*, 561 U.S. 945, 951 (2010) ("[E]vidence [of a personality disorder] might not have made Sears any more likable to the jury, but it might well have helped the jury understand Sears, and his horrendous acts—especially in light of his purportedly stable upbringing.").

No. 15-70038

The evidence would have presented a stronger case that Haynes was distraught and immediately remorseful after the murder, countering another one of the prosecution's principal themes.

A robust mitigation presentation would also have revealed that Haynes was predisposed to addiction and likely high on methamphetamine on the night in question, presenting a much stronger argument to support trial counsel's theory that Haynes was a fundamentally good person whose night of violent crime was influenced by drug dependency and intoxication. *See Cone*, 556 U.S. at 475 (vacating decision that ignored that substance addiction may be mitigating even if it is not exculpatory); *cf. Williams v. Taylor*, 529 U.S. 362, 398 (2000) (evidence that defendant's "violent behavior was a compulsive reaction rather than the product of cold-blooded premeditation" weighed in favor of prejudice). It would also have explained the interrelation of Haynes's home life, mental-health problems, behavioral problems, and substance-abuse problems, with likely repercussions for the jury's assessment of Haynes's moral blameworthiness. *See Sears*, 561 U.S. at 951. Additional evidence would have "humanize[d]" Haynes by showing how many people in his life thought of him as a good person: As the affidavits of over forty lay witnesses show, he was well liked by his family members, friends, acquaintances, and teachers. *See Neal v. Puckett*, 286 F.3d 230, 244 (5th Cir. 2002) (en banc) (undiscovered evidence that defendant had people in his life who saw his worth contributed to finding of prejudice). Furthermore, it would have provided the jury with a better framework for assessing Haynes's risk of future violence in prison, which was likely to be low given Haynes's good behavior in institutional settings and the fact that experts thought the structure of prison would abate the risk of violence.

The majority opinion once again misrepresents the relevant legal standard by suggesting that Haynes must establish that counsel's deficient

No. 15-70038

performance necessarily altered the outcome of his case.  *See* Op. at 6.   In fact, Haynes's ultimate burden is only to show "a probability sufficient to undermine confidence in that outcome."  *Porter v. McCollum*, 558 U.S. 30, 44 (2009) (cleaned up).  And his only burden at this stage is to show that his claim is substantial.  *See Martinez*, 566 U.S. at 14; *Seven Elves*, 635 F.2d at 402.

"Capital punishment must be limited to those offenders who commit a narrow category of the most serious crimes and whose extreme culpability makes them the most deserving of execution."  *Roper v. Simmons*, 543 U.S. 551, 568 (2005) (cleaned up).  Before the night of the offense, Haynes had no criminal record, let alone one that would portend a capital offense.  Given the relatively limited case in aggravation, which mainly included Haynes's actions the night of the murder and evidence of his mental-health problems, this was a case in which presentation of the available mitigation evidence was very likely to persuade at least one juror that Haynes was not "deserving of execution."  *See id.*  In sum, Haynes has made a substantial showing with respect to the merits of his claim.

In light of the above, a proper balancing of equitable factors weighs in favor of Rule 60(b) relief: for reasons already established, Haynes's claim is substantial yet unreviewed; his "motion was made within a reasonable time," just months after the landmark decision in *Martinez* lifted the procedural bar to his claim; and Rule 60(b) "should be liberally construed in order to achieve substantial justice," here, ensuring that a death penalty petitioner's substantial ineffective assistance of trial counsel claim has been considered. *See Seven Elves*, 635 F.2d at 402.

The majority opinion repeatedly cites to finality interests, but this cannot overcome the strong showing in favor of reopening Haynes's case.  The majority opinion cites *Diaz v. Stephens,* 731 F.3d 370 (5th Cir. 2013), for the proposition that "in the context of habeas law, comity and federalism elevate

16

the concerns of finality, rendering the 60(b)(6) bar even more daunting." But, as is clear from that opinion, the quoted language is a statement by one judge only, not joined by the other panel members. *See id.* at 376 n.1 (statement of Jones, J.) ("Judge Jones notes that . . . . in the context of habeas law, comity and federalism elevate the concerns of finality, rendering the 60(b)(6) bar even more daunting."). In any case, whatever weight this statement might carry is strongly tempered by the Supreme Court's recent rejection of the notion that finality is the overriding concern when assessing Rule 60(b) motions in habeas cases. *Buck*, 137 S. Ct. at 779. As the Court explained, "the whole purpose of Rule 60(b) is to make an exception to finality." *Id.* (cleaned up).

I would add that the whole purpose of federal habeas review is to make an exception to finality. Indeed, in this context, our duty to search for constitutional error is at its apex. *See Burger v. Kemp*, 483 U.S. 776, 785 (1987) ("Our duty to search for constitutional error with painstaking care is never more exacting than it is in a capital case."). I believe Haynes's claim deserves, but has not received, close consideration. I would hold that the district court's ruling constituted an abuse of discretion and remand for plenary consideration of the merits of his claim. For these reasons, I respectfully dissent.